**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

**CIVIL ACTION NO. 04-58-JBC**

**MONROE GUARANTY INSURANCE COMPANY, PLAINTIFF,**

**V.** **MEMORANDUM OPINION AND ORDER**

**TEE ENGINEERING COMPANY, INC., DEFENDANT.**

* * * * * * * * * * *

This action is before the court upon the plaintiff's motion for summary judgment (DE 21) on its petition for declaratory judgment (DE 1).

**I. Statement of Facts**

Monroe Guaranty Insurance Co., at all times relevant to the events leading to the underlying action, held two insurance policies in favor of TEE Engineering: a Commercial General Liability Policy ("General Policy") and a Commercial Umbrella Liability Policy ("Umbrella Policy"). Monroe Guaranty filed an action in this court for declaratory judgment pursuant to 28 U.S.C. § 2201 to determine its rights and obligations with regard to the provision of defense and indemnification to TEE. Monroe moves for summary judgment on the grounds that it has no obligation of defense or indemnification under either policy as a matter of law because the underlying cause of action is expressly excluded from coverage by the insurance contracts.

In the underlying wrongful death action, *Blair v. Cody Mining Co., et al.*, Knott Cir. Ct. Civil Action No. 03-CI-382, the plaintiffs alleged that the defendants

Tee Engineering Co. ("TEE"), "a company in the engineering business," and Don F. Blackburn, president of TEE, failed "to perform their engineering duties safely and without harm to person, land or chattel," which caused the damages suffered by the plaintiffs.

The General Policy issued by Monroe excludes from coverage bodily injury "arising out of the rendering of or failure to render any *professional* services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity." (General Policy, Endorsement, "Exclusion - Engineers, Architects or Surveyors: Professional Liability," found at Plaintiff's Exhibit A to Complaint) (emphasis added). Under the policy, professional services include (1) the preparation and approval of "maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and (2) Supervisory, inspection, architectural or engineering activities." *Id.*

The Umbrella Policy also excludes from coverage any bodily injury "arising out of the rendering of or failure to render any *professional* services," but does not specify or define "any professional services." (Umbrella Policy at 5, found at Plaintiff's Exhibit B to Complaint) (emphasis added). The exclusion extends "to any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with any exclusion." *Id.* at 1.

TEE's involvement at the site of the accident is developed through two

depositions of its president, Don Blackburn.[1] Working from a base map provided by the operator and reflecting his plans, TEE employees, at the request of the mine operator or the lessor, performed generic surveys of the mine by inserting markers called "spads" into the roof of the mine and taking measurements based on their location.[2] Based on those measurements, a software program generated an "as-mined" map – an accurate graphic representation of what has been mined up to a certain point and how well the mine conforms to its projected path.

The underground work of setting spads in this case was typically performed by two employees, neither of whom was a registered engineer or land surveyor. The conversion of the raw data to the graphical portrayal was also done by a non-licensed employee of TEE. For certain, but not all, purposes, the maps generated from these surveys were required to be certified. Blackburn, the only registered professional engineer or land surveyor at TEE, made any necessary certifications by verifying only that certain features were reflected on the map. The certification made no representation that the work was prepared by him, or by someone under his direct supervisory control, *or* that the information was correct. Blackburn did,

---

[1] The depositions were taken on June 8, 2004, and March 11, 2005. The following description is a summary of Mr. Blackburn's testimony on both occasions.

[2] Blackburn described TEE's function as "to do survey work and that's it . . . . [A]ll the projection work, everything else was done by the operator . . . . Everything that concerned projections, and that sort of thing was -- was given to us on the base map. The only thing that we had done here is that as the mining is done we go in and locate those working to show what the underground configuration is." (Blackburn Dep. June 8, 2004, at 31).

however, review the work of the TEE employees where necessary to assure himself that the required features were contained on the maps. The need for certification depends on the request and arose one or two times per year during the course of this particular project, typically in the context of government demands for certified records. Surveys were conducted once or twice per month.

**II. Standard of Review**

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party's burden can be satisfied by demonstrating that there is an absence of evidence to support the non-moving party's case. *Id*. at 324-25. In order to survive summary judgment, the plaintiffs must come forward with evidence on which the jury could reasonably find for the plaintiffs. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986). The non-moving party must present more than a mere scintilla of evidence to defeat a motion for summary judgment. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989); Fed. R. Civ. Pro. 56(e). The court must view all of the evidence in the light most favorable to the party opposing summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**III. Legal Analysis**

Professional services are those which require a license and/or higher education or special knowledge and training. *Plaza Bottle Shop, Inc. v. Al Torstrick*

*Ins. Agency, Inc.,* 712 S.W.2d 349, 351 (Ky. Ct. App. 1986); K.R.S. 322.243. The determination of whether services rendered are professional depends on "the status of the person performing the particular activity." *Vendevelde v. Falls City Builders, Inc.*, 744 S.W.2d 432, 433 (Ky. Ct. App. 1988). Thus, even though it could be performed by a layman, where a particular task is in fact accomplished by a registered professional it constitutes a professional service. *Id.* Following from that proposition, if a job could be and in fact is rendered by a layman, it is inherently not a professional service.

Several different TEE employees performed services in the context of the underlying action. However, the only task that was either required to be or was in fact performed by a licensed or otherwise deemed professional engineer or surveyor was that of certifying the maps generated from the other employees' services as necessary. In light of the rule announced in *Vendevelde*, only Blackburn's certifications could be construed as professional services which might be excluded from coverage under either the terms of the General Policy or the ordinarily understood scope of "professional services" that must be attributed to the exclusion in the Umbrella Policy.[3]

In the context of an insurer's obligation to defend its insured, the Sixth Circuit has held that under Kentucky law such a duty exists "if the language of the

[3] Where terms of an insurance contract are ambiguous, they are construed against the drafter, given a reasonable interpretation, and "construed in light of the usage and understanding of the average person." *Stone v. Kentucky Farm Bureau Mut. Ins. Co.*, 34 S.W.3d 809, 810-11 (Ky. Ct. App. 2000).

underlying complaint against the insured brings the action within the scope of the insurance contract." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 507 (6th Cir. 2003). The underlying complaint in this action does not specify which duties performed by TEE — the placement of spads and collection of data, the conversion of data into a graphical representation of mining progress, or any requested certifications — were performed in a negligent manner so as to contribute to the resulting harm.

The question of whether indemnity is required is a question of law to be determined only once disputes of fact have been resolved by the jury. *Robinson v. Murlin Phillips & MFA Ins. Co.*, 557 S.W.2d 202, 204 (Ky. 1977). There appears to exist a material question of fact concerning the nature of the defendant's services implicated in the underlying action. Accordingly,

It is **ORDERED** that the plaintiff's motion for summary judgment (DE 21) is **DENIED.**

Signed on June 23, 2005




Jennifer B. Coffman

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY